# REDFIN | Offer Summary

# 12178 Cheshire Ct

Bristow, VA 20136

## Offer Terms

| | | |
|---|---|---|
| **3/31/2020**<br>Close Date | **$96,000**<br>Down Payment | **$480,000**<br>Offer Price |
| **Option to Void Only**<br>Home Inspection Contingency | **30 days**<br>Bankruptcy Court Contingency | **30 days**<br>Home Sale Contingency |

## About Our Offer

Hi Paul and Yavette,

I hope this letter finds you well. On behalf of my clients, Autumn and Aaron Prescott, I am proud to present the accompanying offer to purchase your home at 12178 Cheshire Ct. Autumn and Aaron are very excited about your house and can't wait to make it their own!

Please let me know if you have any questions, or if there is anything additional I can provide that would assist you in moving forward with acceptance of Autumn's and Aaron's offer.

Thank you for your time and consideration, and I look forward to hearing from you.

Sincerely,
Steve Popovitch

### Our Team



**Steve Popovitch**
Redfin Agent
(703) 895-0941 Cell
steve.popovitch@redfin.com
License #0225215308 (VA)



**Joy DeLones**
Transaction Coordinator
(540) 305-4119 Cell
joy.delones@redfin.com
License #0225240012

**Working With Steve and Joy**

- Steve and Joy have closed 50+ transactions in the past 12 months.
- Steve works closely with a licensed coordinator to provide the fastest possible service and ensure the entire process is seamless.
- Joy assists Steve with coordinating property access for inspectors, mortgage appraisers and insurers, working with escrow, preparing paperwork, and ensuring an on-time closing.
- The Redfin online Deal Room ensures a smooth closing by storing all transaction documents and tracking each step.



DocuSign Envelope ID: 2B5A82A5-8B94-44F5-9476-D02C2325CA9F



Real Estate Agent Copy

1050 Woodward Avenue | Detroit, MI 48226

January 29, 2020

Dear Real Estate Professional,

It's my pleasure to inform you that we have fully approved and underwritten Autumn and Aaron Prescott, for the following home loan.

Program: 30 yr Conventional Fixed
Loan Amount: $384,000
Sales Price: $480,000
Expiration Date: 04/25/2020

This amount is contingent upon the sale of your current property.

Our underwriting team has verified income, assets and credit. This approval letter does not constitute an interest rate commitment.

If there is anything I can do to be of assistance, please reach out to me with the contact information provided below.

Sincerely,

**Ray Dean**
Purchase Mortgage Banker
NMLS # 1366838
Licensed in the state of Virginia
(800) 226-6308, ext. 50191
Cell: (313) 701-3528
Fax: (855) 655-0972
Email: RayDean@quickenloans.com

DocuSign Envelope ID: 2B6A82A5-85D4-44F5-947B-D02C23825CA9

# RESIDENTIAL SALES CONTRACT (Virginia)

This sales contract ("Contract") is offered on <u>1/29/2020</u> ("Date of Offer") between _____
<u>Autumn Prescott and Aaron Prescott</u> ("Buyer") and <u>Paul Houston and Yavette Houston</u> _____
_____ ("Seller") who, among other things, hereby confirm and acknowledge by their initials and
signatures herein that by prior disclosure in this real estate transaction <u>Keller Williams Chantilly Ventures LLC</u>
("Listing Brokerage") represents Seller, and <u>Redfin Corporation</u> ("Cooperating
Brokerage") represents ☒ Buyer **OR** ☐ Seller. The Listing Brokerage and Cooperating Brokerage are
collectively referred to as "Broker." (If the brokerage firm is acting as a dual representative for both
Seller and Buyer, then the appropriate disclosure form is attached to and made a part of this Contract.)
In consideration of the mutual promises and covenants set forth below, and other good and valuable
consideration the receipt and sufficiency of which are acknowledged, the parties agree as follows:

1. **REAL PROPERTY.** Buyer will buy and Seller will sell for the sales price ("Sales Price"), Seller's
   entire interest in the real property (with all improvements, rights and appurtenances) described as
   follows ("Property"):
   TAX Map/ID # <u>7595-24-7337</u> Legal Description: Lot(s) _____
   Section _____ Subdivision or Condominium <u>VILLAGES AT SAYBROOKE</u> _____
   Parking Space(s) # <u>NA</u> County/Municipality <u>Prince William County</u> _____
   Deed Book/Liber # _____ Page/Folio # _____
   Street Address <u>12178 Cheshire Ct</u> _____
   Unit # _____ City <u>Bristow</u> ZIP Code <u>20136</u>

2. **PRICE AND FINANCING.** (Any % are percentages of Sales Price)
   **A. Down Payment.** $_____ or % <u>20</u>
   **B. Financing.**
   
   1. First Trust (if applicable) $_____ or % <u>80</u>
      ☒ **Conventional** ☐ **VA** ☐ **FHA**
      ☐ **USDA** ☐ **Other:** _____
   
   2. Second Trust (if applicable) $_____ or % _____
   
   3. Seller Held Trust (if applicable) $_____ or % _____
   
   **TOTAL FINANCING** $_____ or % <u>80</u>
   
   **SALES PRICE** $ <u>480,000.00</u>
   
   **C. Seller Subsidy.** **(LESS)** $ <u>0</u> or % _____
   
   **D. Financing Contingency and Application.** This Contract ☒ is (addendum attached) **OR** ☐ is
   not contingent on financing. If this Contract is contingent on financing: (i) Buyer will make
   written application for the financing and any lender-required property insurance no later than
   seven (7) days after Date of Ratification; (ii) Buyer grants permission for Cooperating Brokerage
   and the lender to disclose to Listing Brokerage and Seller general information available about the
   progress of the loan application and loan approval process; and (iii) Seller agrees to comply with
   reasonable lender requirements.
   
   If Buyer fails to settle, except due to any Default by Seller, then the provisions of the DEFAULT
   paragraph shall apply.

Seller  Buyer

3. **DEPOSIT.** Buyer's deposit ("Deposit") in the amount of ☒ $ _4,800.00_____check/bank-wired funds; and/or ☐ $ _____ by note due and payable on _____ shall be held by _Title Forward_____("Escrow Agent"). Buyer ☐ has delivered Deposit to Escrow Agent **OR** ☒ will deliver Deposit to Escrow Agent by _7___ days after Date of Ratification.

If the Escrow Agent is a Virginia Real Estate Board ("VREB") licensee, the parties direct Escrow Agent to place Deposit in an escrow account by the end of the fifth business banking day following receipt or following Date of Ratification, whichever is later. If Escrow Agent is not a VREB licensee, Deposit will be placed in an escrow account of Escrow Agent after Date of Ratification in conformance with the laws and regulations of Virginia and/or if VA financing applies, as required by Title 38 of the U.S. Code. This account may be interest bearing and all parties waive any claim to interest resulting from Deposit. Deposit will be held in escrow until: (i) credited toward Sales Price at Settlement; (ii) all parties have agreed in writing as to its disposition; (iii) a court of competent jurisdiction orders disbursement and all appeal periods have expired; or, (iv) disposed of in any other manner authorized by law. Seller and Buyer agree that Escrow Agent will have no liability to any party on account of disbursement of Deposit or on account of failure to disburse Deposit, except in the event of Escrow Agent's gross negligence or willful misconduct.

4. **SETTLEMENT.** Seller and Buyer will make full settlement in accordance with the terms of this Contract ("Settlement") on, or with mutual consent before, _March 31, 2020_____ ("Settlement Date") except as otherwise provided in this Contract. If Settlement Date falls on a Saturday, Sunday, or legal holiday, then Settlement will be on the prior business day.
**NOTICE TO BUYER REGARDING THE REAL ESTATE SETTLEMENT AGENTS ACT ("RESAA") Choice of Settlement Agent: You have the right to select a Settlement agent to handle the closing of this transaction. The Settlement agent's role in closing your transaction involves the coordination of numerous administrative and clerical functions relating to the collection of documents and the collection and disbursement of funds required to carry out the terms of the contract between the parties. If part of the purchase price is financed, your lender will instruct the Settlement agent as to the signing and recording of loan documents and the disbursement of loan proceeds. No Settlement agent can provide legal advice to any party to the transaction except a Settlement agent who is engaged in the private practice of law in Virginia and who has been retained or engaged by a party to the transaction for the purpose of providing legal services to that party.**
**Variation by agreement: The provisions of the Real Estate Settlement Agents Act may not be varied by agreement, and rights conferred by this chapter may not be waived. The Seller may not require the use of a particular settlement agent as a condition of the sale of the property. Escrow, closing and Settlement service guidelines: The Virginia State Bar issues guidelines to help Settlement agents avoid and prevent the unauthorized practice of law in connection with furnishing escrow, Settlement or closing services. As a party to a real estate transaction, you are entitled to receive a copy of these guidelines from your Settlement agent, upon request, in accordance with the provisions of the Real Estate Settlement Agents Act.**
Buyer designates _Title Forward_____("Settlement Agent").
Buyer agrees to contact Settlement Agent within 10 Days of Date of Ratification to schedule Settlement. Settlement Agent shall order the title exam and survey if required.

To facilitate Settlement Agent's preparation of various closing documents, including any Closing Disclosure, Buyer hereby authorizes Settlement Agent to send such Closing Disclosure to Buyer by

electronic means and agrees to provide Settlement Agent Buyer's electronic mail address for that purpose only.

5. **DOWN PAYMENT.** The balance of the down payment will be paid on or before Settlement Date by certified or cashier's check or by bank-wired funds as required by Settlement Agent. An assignment of funds shall not be used without prior written consent of Seller.

6. **DELIVERY.** This paragraph specifies the general delivery requirements under this Contract. For delivery of property or condominium owner's association documents see the VIRGINIA PROPERTY OWNERS' ASSOCIATION ACT and/or VIRGINIA CONDOMINIUM ACT paragraphs of this Contract. Delivery of the Notice pursuant to the Virginia Residential Property Disclosure Act is addressed in the VIRGINIA RESIDENTIAL PROPERTY DISCLOSURE ACT paragraph.

Delivery ("Delivery," "delivery," or "delivered") methods may include hand-carried, sent by professional courier service, by United States mail, by facsimile, or email transmission. The parties agree that Delivery will be deemed to have occurred on the day: delivered by hand, delivered by a professional courier service (including overnight delivery service) or by United States mail with return receipt requested, or sent by facsimile or email transmission, either of which produces a tangible record of the transmission.

Deliveries will be sent as follows:
**A.** Addressed to Seller **at Property address unless otherwise specified below** by ☐ United States mail, hand delivery or courier service **OR** ☐ fax **OR** ☒ email (check all that apply):
To Seller: vahomeseller@gmail.com

**B.** Addressed to Buyer by ☐ United States mail, hand delivery or courier service **OR** ☐ fax **OR** ☒ email (check all that apply):
To Buyer: steve.popovitch@redfin.com

No party to this Contract will refuse Delivery in order to delay or extend any deadline established in this Contract.

7. **VIRGINIA RESIDENTIAL PROPERTY DISCLOSURE ACT.** The Virginia Residential Property Disclosure Act requires Seller to deliver a disclosure statement prior to the acceptance of this Contract unless the transfer of Property is exempt. The law requires Seller, on a disclosure statement provided by the Real Estate Board, to state that Seller makes no representations or warranties concerning the physical condition of the Property and to sell the Property "as is," except as otherwise provided in this Contract.

If the disclosure statement is delivered to Buyer after Date of Ratification, Buyer's sole remedy shall be to terminate this Contract at or prior to the earliest of (i) three (3) days after delivery of the disclosure statement in person; (ii) five (5) days after the postmark if the disclosure statement is sent by United States mail, postage prepaid, and properly addressed to Buyer; (iii) settlement upon purchase of Property; (iv) occupancy of Property by Buyer; (v) Buyer making written application to a lender for a mortgage loan where such application contains a disclosure that the right of termination shall end upon the application for the mortgage loan; or (vi) the execution by Buyer after receiving the disclosure statement of a written waiver of Buyer's right of termination separate from this Contract.

Written Notice of termination may be (i) hand delivered; (ii) sent by United States mail, postage prepaid, provided that Buyer retains sufficient proof of mailing, which may be either a United States



postal certificate of mailing or a certificate of service confirming that such mailing was prepared by Buyer; (iii) sent by electronic means to the facsimile number or electronic mailing address provided by Seller in the DELIVERY paragraph, provided that Buyer retains sufficient proof of the electronic delivery, which may be an electronic receipt of delivery, a confirmation that the notice was sent by facsimile, or a certificate of service; (iv) overnight delivery using a commercial service or the United States Postal Service.

Any such termination shall be without penalty to Buyer, and any deposit shall be promptly returned to Buyer.

8. **VIRGINIA PROPERTY OWNERS' ASSOCIATION ACT.** Seller represents that the Property ☒ is OR ☐ is not located within a development that is subject to the Virginia Property Owners' Association Act ("POA Act" or "Act" solely in this Paragraph). Section 55.1-1808(B) requires the following contract language:

Subject to the provisions of subsection A of §55.1-1814, an owner selling a lot shall disclose in the contract that (i) the lot is located within a development that is subject to the Virginia Property Owners' Association Act (§55.1-1800 et seq.); (ii) the Property Owners' Association Act (§55.1-1800 et seq.) requires the seller to obtain from the property owners' association an association disclosure packet and provide it to the purchaser; (iii) the purchaser may cancel the contract within three days after receiving the association disclosure packet or being notified that the association disclosure packet will not be available; (iv) if the purchaser has received the association disclosure packet, the purchaser has a right to request an update of such disclosure packet in accordance with subsection H of §55.1-1810 or subsection D of §55.1-1811, as appropriate; and (v) the right to receive the association disclosure packet and the right to cancel the contract are waived conclusively if not exercised before settlement.

For delivery of the Packet or the Notice of non-availability of the Packet, Buyer prefers delivery at __ autumn.prescott@gmail.com    and    steve.popovitch@redfin.com _____ if electronic or _____ _____ if hard copy.

The Act further provides that for purposes of clause (iii), the association disclosure packet shall be deemed not to be available if (a) a current annual report has not been filed by the association with either the State Corporation Commission pursuant to §13.1-936 or with the Common Interest Community Board pursuant to §55.1-1835, (b) the seller has made a written request to the association that the packet be provided and no such packet has been received within 14 days in accordance with subsection A of §55.1-1809, or (c) written notice has been provided by the association that a packet is not available.

The Act further provides that if the contract does not contain the disclosure required by subsection B of §55.1-1808, the purchaser's sole remedy is to cancel the contract prior to settlement.

The Act further provides that the information contained in the association disclosure packet shall be current as of a date specified on the association disclosure packet prepared in accordance with the Act; however, a disclosure packet update or financial update may be requested in accordance with subsection G of §55.1-1810 or subsection D of §55.1-1811, as appropriate. The purchaser may cancel the contract: (i) within three days after the date of the contract, if on or before the date that the purchaser signs the contract, the purchaser receives the association disclosure packet, is notified that the association disclosure packet will not be available, or receives an association disclosure packet that is not in conformity with the provisions of §55.1-1809; (ii) within three days after receiving the association disclosure packet if the association disclosure packet, notice that the association

Seller  Buyer

disclosure packet will not be available, or receives an association disclosure packet that is not in conformity with the provisions of §55.1-1809 is hand delivered, delivered by electronic means, or delivered by a commercial overnight delivery service or the United States Postal Service, and a receipt obtained; or (iii) within six days after the postmark date if the association disclosure packet, notice that the association disclosure packet will not be available, or receives an association disclosure packet that is not in conformity with the provisions of §55.1-1809 is sent to the purchaser by United States mail. The purchaser may also cancel the contract at any time prior to settlement if the purchaser has not been notified that the association disclosure packet will not be available, and the association disclosure packet is not delivered to the purchaser.

The Act further provides that Notice of cancellation shall be provided to the lot owner or his agent by one of the following methods: (a) Hand delivery; (b) United States mail, postage prepaid, provided the sender retains sufficient proof of mailing, which may be either a United States postal certificate of mailing or a certificate of service prepared by the sender confirming such mailing; (c) Electronic means provided the sender retains sufficient proof of the electronic delivery, which may be an electronic receipt of delivery, a confirmation that the notice was sent by facsimile, or a certificate of service prepared by the sender confirming the electronic delivery; or (d) Overnight delivery using a commercial service or the United States Postal Service.

The Act further provides that in the event of a dispute, the sender shall have the burden to demonstrate delivery of the notice of cancellation. Such cancellation shall be without penalty, and the seller shall cause any deposit to be returned promptly to the purchaser.

The Act further provides that whenever any contract is canceled based on a failure to comply with subsection B or D of §55.1-1808 or pursuant to subsection C of §55.1-1808, any deposit or escrowed funds shall be returned within 30 days of the cancellation, unless the parties to the contract specify in writing a shorter period.

The parties specify that such funds shall immediately be returned pursuant to the VOID CONTRACT paragraph of this Contract.

The Act further provides that any rights of the purchaser to cancel the contract provided by this chapter are waived conclusively if not exercised prior to settlement.

The Act further provides that except as expressly provided in the Act, the provisions of §55.1-1808 and §55.1-1809 may not be varied by agreement, and the rights conferred by §55.1-1808 and §55.1-1809 may not be waived.

The Act further provides that failure to receive copies of an association disclosure packet shall not excuse any failure to comply with the provisions of the declaration, articles of incorporation, bylaws, or rules or regulations.

9. **VIRGINIA CONDOMINIUM ACT.** Seller represents that the Property ☐ is **OR** ☒ is not a condominium unit. The Virginia Condominium Act (the "Condominium Act" or "Act" solely in this Paragraph), requires the following contract language:

In the event of any resale of a condominium unit by a unit owner other than the declarant, and subject to the provisions of subsection F and subsection A of §55.1-1972, the unit owner shall disclose in the contract that (i) the unit is located within a development which is subject to the Condominium Act, (ii) the Condominium Act requires the seller to obtain from the unit owners' association a resale certificate and provide it to the purchaser, (iii) the purchaser may cancel the contract within three days after receiving the resale certificate or being notified that the resale



certificate will not be available, (iv) if the purchaser has received the resale certificate, the purchaser has a right to request a resale certificate update or financial update in accordance with §55.1-1992, as appropriate, and (v) the right to receive the resale certificate and the right to cancel the contract are waived conclusively if not exercised before settlement.

For delivery of the Certificate or the Notice of non-availability of the Certificate, Buyer prefers delivery at _____ if electronic or ___ _____ if hard copy.

The Act further provides that for purposes of clause (iii), the resale certificate shall be deemed not to be available if (a) a current annual report has not been filed by the unit owners' association with either the State Corporation Commission pursuant to §13.1-936 or the Common Interest Community Board pursuant to §55.1-1980, (b) the seller has made a written request to the unit owners' association that the resale certificate be provided and no such resale certificate has been received within 14 days in accordance with subsection C of §55.1-1991, or (c) written notice has been provided by the unit owners' association that a resale certificate is not available.

The Act further provides that if the contract does not contain the disclosure required by subsection B of §55.1-1990, the purchaser's sole remedy is to cancel the contract prior to settlement.

The Act further provides that the information contained in the resale certificate shall be current as of a date specified on the resale certificate. A resale certificate update or a financial update may be requested as provided in §55.1-1992, as appropriate.

The Act further provides that the purchaser may cancel the contract (i) within three days after the date of the contract, if on or before the date that the purchaser signs the contract, the purchaser receives the resale certificate, is notified that the resale certificate will not be available, or receives a resale certificate that does not contain the information required by §55.1-1991 to be included in the resale certificate; (ii) within three days after receiving the resale certificate if the resale certificate, notice that the resale certificate will not be available, or a resale certificate that does not contain the information required by §55.1-1991 to be included in the resale certificate is hand delivered, delivered by electronic means, or delivered by a commercial overnight delivery service or the United States Postal Service, and a receipt is obtained; or (iii) within six days after the postmark date if the resale certificate, notice that the resale certificate will not be available, or a resale certificate that does not contain the information required by §55.1-1991 to be included in the resale certificate is sent to the purchaser by United States mail. The purchaser may also cancel the contract at any time prior to settlement if the purchaser has not been notified that the resale certificate will not be available, and the resale certificate is not delivered to the purchaser.

The Act further provides that Notice of cancellation shall be provided to the unit owner or his agent by one of the following methods: (a) Hand delivery; (b) United States mail, postage prepaid, provided the sender retains sufficient proof of mailing, which may be either a United States postal certificate of mailing or a certificate of service prepared by the sender confirming such mailing; (c) Electronic means provided the sender retains sufficient proof of the electronic delivery, which may be an electronic receipt of delivery, a confirmation that the notice was sent by facsimile, or a certificate of service prepared by the sender confirming the electronic delivery; or (d) Overnight delivery using a commercial service or the United States Postal Service.

The Act further provides that in the event of a dispute, the sender shall have the burden to demonstrate delivery of the notice of cancellation. Such cancellation shall be without penalty, and the unit owner shall cause any deposit to be returned promptly to the purchaser.

The Act further provides that failure to receive a resale certificate shall not excuse any failure to comply with the provisions of the condominium instruments, articles of incorporation, or rules or regulations.

The Act further provides that except as expressly provided in the Act, the provisions of the Act shall not be varied by agreement, and the rights conferred by the Act shall not be waived.

10. **PROPERTY MAINTENANCE AND CONDITION.** Except as otherwise specified herein, Seller will deliver Property free and clear of trash and debris, broom clean and in substantially the same physical condition to be determined as of ☐ Date of Offer **OR** ☒ Date of home inspection **OR** ☐ Other: _____. Seller will have all utilities in service through Settlement or as otherwise agreed. Buyer and Seller will not hold Broker liable for any breach of this Paragraph.

Buyer acknowledges, subject to Seller acceptance, that this Contract may be contingent upon home inspection(s) and/or other inspections to ascertain the physical condition of Property. If Buyer desires one or more inspection contingencies, such contingencies must be included in an addendum to this Contract.

☒ This Contract is contingent upon home inspection(s) and/or other inspections. (Addendum attached)
**OR**
☐ Buyer waives the opportunity to make this Contract contingent upon home inspection(s).

Buyer acknowledges that except as otherwise specified in this Contract, Property, including electrical, plumbing, existing appliances, heating, air conditioning, equipment and fixtures shall convey in its AS-IS condition as of the date specified above.

11. **ACCESS TO PROPERTY.** Seller will provide Broker, Buyer, inspectors representing Buyer, and representatives of lending institutions for Appraisal purposes reasonable access to the Property to comply with this Contract. In addition, Buyer and/or Buyer's representative will have the right to make walk-through inspection(s) within seven (7) days prior to Settlement and/or occupancy, unless otherwise agreed to by Buyer and Seller.

12. **UTILITIES, WATER, SEWAGE, HEATING AND CENTRAL AIR CONDITIONING.** (Check all that apply)

Water Supply:        ☒ Public  ☐ Private Well        ☐Community Well
Hot Water:        ☐ Oil  ☒ Gas  ☐ Elec.  ☐Other _____
Air Conditioning:  ☐ Oil  ☐ Gas  ☒ Elec.  ☐Heat Pump  ☐Other_____  ☐ Zones _____
Heating:        ☐ Oil  ☒ Gas  ☐ Elec.  ☐Heat Pump  ☐Other_____  ☐ Zones _____
Sewage Disposal:  ☒ Public  ☐ Septic for # BR____☐Community Septic ☐ Alternative Septic for # BR:____
Septic Waiver Disclosure provided by Seller (if applicable) per VA Code §32.1-164.1:1. State Board of Health septic system waivers are not transferable.

13. **PERSONAL PROPERTY AND FIXTURES.** Property includes the following personal property and fixtures, if existing: built-in heating and central air conditioning equipment, plumbing and lighting fixtures, sump pump, attic and exhaust fans, storm windows, storm doors, screens, installed wall-to-wall carpeting, window shades, blinds, window treatment hardware, smoke and heat detectors, antennas, exterior trees, and shrubs. Unless otherwise agreed to in writing, all surface or wall mounted electronic components/devices **DO NOT** convey; however, all related mounts, brackets and hardware DO convey. If more than one of an item conveys, the number of items is noted.

**The items marked YES below are currently installed or offered.**

| Yes | No | # | Items | Yes | No | # | Items | Yes | No | # | Items |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ☒ | ☒ | | Alarm System | ☐ | ☒ | | Freezer | ☐ | ☒ | | Satellite Dish |
| ☐ | ☒ | | Built-in Microwave | ☐ | ☒ | | Furnace Humidifier | ☒ | ☐ | | Storage Shed |
| ☒ | ☐ | 4 | Ceiling Fan | ☒ | ☐ | | Garage Opener | ☐ | ☒ | | Stove or Range |
| ☐ | ☒ | | Central Vacuum | ☒ | ☐ | | w/ remote | ☐ | ☒ | | Trash Compactor |
| ☒ | ☐ | | Clothes Dryer | ☒ | ☐ | | Gas Log | ☐ | ☒ | 2 | Wall Oven |
| ☒ | ☐ | | Clothes Washer | ☐ | ☒ | | Hot Tub, Equip & Cover | ☒ | ☒ | | Water Treatment System |
| ☒ | ☐ | | Cooktop | ☐ | ☒ | | Intercom | ☐ | ☒ | | Window A/C Unit |
| ☒ | ☐ | | Dishwasher | ☐ | ☒ | | Playground Equipment | ☐ | ☒ | | Window Fan |
| ☐ | ☒ | | Disposer | ☐ | ☒ | | Pool, Equip, & Cover | ☒ | ☐ | | Window Treatments |
| ☐ | ☒ | | Electronic Air Filter | ☒ | ☐ | | Refrigerator | ☒ | ☒ | | Wood Stove |
| ☐ | ☒ | | Fireplace Screen/Door | ☒ | ☐ | | w/ ice maker | | | | |

**OTHER** Seller to confirm all paragraph 13 items prior to contract ratification.
**Pool table, projector, and screen will convey**

**FUEL TANKS.** ☐ Fuel Tank(s) Leased # NA ☐ Fuel Tank(s) Owned (Fuel Tank(s), if owned, convey) # NA . Unless otherwise agreed to in writing, any heating or cooking fuels remaining in supply tank(s) at Settlement will become the property of Buyer. _____

**LEASED ITEMS.** Any leased items, systems or service contracts (including, but not limited to, fuel tanks, water treatment systems, lawn contracts, security system monitoring, and satellite contracts) **DO NOT** convey absent an express written agreement by Buyer and Seller. The following is a list of the leased items within Property: _____
  NA

14. **IRS/FIRPTA – WITHHOLDING TAXES FOR FOREIGN SELLER.** Seller ☐ is **OR** ☒ is not a "Foreign Person," as defined by the Foreign Investment in Real Property Tax Act (FIRPTA). If Seller is a Foreign Person, Buyer may be required to withhold and pay to the Internal Revenue Service (IRS) up to fifteen percent (15%) of the Sales Price on behalf of the Seller and file an IRS form which includes both Seller and Buyer tax identification numbers. The parties agree to cooperate with each other and Settlement Agent to effectuate the legal requirements. If Seller's proceeds are not sufficient to cover the withholding obligations under FIRPTA, Seller may be required to pay at Settlement such additional certified funds necessary for the purpose of making such withholding payment.

15. **BUYER'S REPRESENTATIONS.** Buyer ☒ will **OR** ☐ will not occupy Property as Buyer's principal residence. **Unless specified in a written contingency, neither this Contract nor the financing is dependent or contingent on the sale and settlement or lease of other real property.** Buyer acknowledges that Seller is relying upon all of Buyer's representations, including without limitation, the accuracy of financial or credit information given to Seller, Broker, or the lender by Buyer.

16. **SMOKE DETECTORS.** Seller shall deliver Property with smoke detectors installed and functioning in accordance with the laws and regulations of Virginia.

17. **TARGET LEAD-BASED PAINT HOUSING.** Seller represents that any residential dwellings at Property ☐ were **OR** ☒ were not constructed before 1978. If the dwellings were constructed before



1978, then, unless exempt under 42 U.S.C. 4852d, Property is considered "target housing" under the statute and a copy of the "Sale: Disclosure and Acknowledgment of Information on Lead-Based Paint and/or Lead-Based Paint Hazards" has been attached and made a part of the Contract as required by law. Buyer ☒ does **OR** ☐ does not waive the right to a risk assessment or inspection of Property for the presence of lead-based paint and/or lead-based paint hazards. If not, a copy of the Sales Contract Addendum for Lead-Based Paint Testing is attached to establish the conditions for a lead-based paint risk assessment or inspections.

18. **WOOD-DESTROYING INSECT INSPECTION.** ☐ None ☐ Buyer at Buyer's expense **OR** ☒ Seller at Seller's expense will furnish a written report from a pest control firm dated not more than 90 days prior to Settlement showing that all dwelling(s) and/or garage(s) within Property (excluding fences or shrubs not abutting garage(s) or dwelling(s)) are free of visible evidence of live wood-destroying insects and free from visible damage. Any treatment and repairs for damage identified in the inspection report will be made at Seller's expense and Seller will provide written evidence of such treatment and/or repair prior to date of Settlement which shall satisfy the requirements of this Paragraph.

19. **DAMAGE OR LOSS.** The risk of damage or loss to Property by fire, act of God, or other casualty remains with Seller until the execution and delivery of the deed of conveyance to Buyer at Settlement.

20. **TITLE.** The title report and survey, if required, will be ordered promptly and, if not available on the Settlement Date, then Settlement may be delayed for up to ten (10) business days to obtain the title report and survey after which this Contract, at the option of Seller, may be terminated and Deposit will be refunded in full to Buyer according to the terms of the DEPOSIT paragraph. Fee simple title to Property, and everything that conveys with it, will be sold free of liens except for any loans assumed by Buyer.

Seller will convey title which is good, marketable, and insurable by a licensed title insurance company with no additional risk premium. In case action is required to perfect the title, such action must be taken promptly by Seller at Seller's expense. Title may be subject to commonly acceptable easements, covenants, conditions and restrictions of record, if any, as of Settlement Date. If title is not good and marketable, and insurable by a licensed title insurance company with no additional risk premium, on Settlement Date, Buyer may at Buyer's option either (a) declare the Contract void in writing, or (b) pursue all available legal and equitable remedies. Nothing herein shall prohibit the parties from mutually agreeing to extend Settlement Date under terms acceptable by both parties.

Seller will convey Property by general warranty deed with English covenants of title ("Deed"). The manner of taking title may have significant legal and tax consequences. Buyer is advised to seek the appropriate professional advice concerning the manner of taking title.

Seller will sign such affidavits, lien waivers, tax certifications, and other documents as may be required by the lender, title insurance company, Settlement Agent, or government authority, and authorizes Settlement Agent to obtain pay-off or assumption information from any existing lenders. Unless otherwise agreed to in writing, Seller will pay any special assessments and will comply with all orders or notices of violations of any county or local authority, condominium unit owners' association, homeowners' or property owners' association or actions in any court on account thereof, against or affecting Property on Settlement Date. Broker is hereby expressly released from all liability for damages by reason of any defect in the title.

**21. NOTICE OF POSSIBLE FILING OF MECHANICS' LIEN.** Code of Virginia Section 43-1 et seq. permits persons who have performed labor or furnished materials for the construction, removal, repair or improvement of any building or structure to file a lien against Property. This lien may be filed at any time after the work is commenced or the material is furnished, but not later than the earlier of (i) 90 Days from the last day of the month in which the lienor last performed work or furnished materials; or (ii) 90 Days from the time the construction, removal, repair or improvement is terminated. AN EFFECTIVE LIEN FOR WORK PERFORMED PRIOR TO THE DATE OF SETTLEMENT MAY BE FILED AFTER SETTLEMENT. LEGAL COUNSEL SHOULD BE CONSULTED.

**22. POSSESSION DATE.** Unless otherwise agreed to in writing between Seller and Buyer, Seller will give possession of Property at Settlement, including delivery of keys, key fobs, codes, digital keys, if any. If Seller fails to do so and occupies Property beyond Settlement, Seller will be a tenant at sufferance of Buyer and hereby expressly waives all notice to quit as provided by law. Buyer will have the right to proceed by any legal means available to obtain possession of Property. Seller will pay any damages and costs incurred by Buyer including reasonable attorney fees.

**23. FEES.** Fees for the preparation of the Deed, that portion of Settlement Agent's fee billed to Seller, costs of releasing existing encumbrances, Seller's legal fees and any other proper charges assessed to Seller will be paid by Seller. Fees for the title exam (except as otherwise provided), survey, recording (including those for any purchase money trusts) and that portion of Settlement Agent's fee billed to Buyer, Buyer's legal fees and any other proper charges assessed to Buyer will be paid by Buyer. Fees to be charged will be reasonable and customary for the jurisdiction in which Property is located. Grantor's tax and Regional Congestion Relief Fee (for Alexandria City, Arlington, Fairfax, Loudoun and Prince William Counties and all cities contained within) shall be paid by Seller. Buyer shall pay recording charges for the Deed and any purchase money trusts.

**24. BROKER'S FEE.** Seller irrevocably instructs Settlement Agent to pay Broker compensation ("Broker's Fee") at Settlement as set forth in the listing agreement and to disburse the compensation offered by Listing Brokerage to Cooperating Brokerage in writing as of the Date of Offer, and the remaining amount of Broker's compensation to Listing Brokerage.

**25**. **ADJUSTMENTS.** Rents, taxes, water and sewer charges, condominium unit owners' association, homeowners' and/or property owners' association regular periodic assessments (if any) and any other operating charges, are to be adjusted to the Date of Settlement. Taxes, general and special, are to be adjusted according to the most recent property tax bill(s) for Property issued prior to Settlement Date, except that recorded assessments for improvements completed prior to Settlement, whether assessments have been levied or not, will be paid by Seller or allowance made at Settlement. If a loan is assumed, interest will be adjusted to the Settlement Date and Buyer will reimburse Seller for existing escrow accounts, if any.

**26. ATTORNEY'S FEES.**

**A.** If any Party breaches this Contract and a non-breaching Party retains legal counsel to enforce its rights hereunder, the non-breaching Party shall be entitled to recover against the breaching Party, in addition to any other damages recoverable against any breaching Party, all of its reasonable Legal Expenses incurred in enforcing its rights under this Contract, whether or not suit is filed, and in obtaining, enforcing and/or defending any judgment related thereto. Should any tribunal of competent jurisdiction determine that more than one party to the dispute has breached this Contract, then all such breaching Parties shall bear their own costs, unless the tribunal determines that one or more parties is



a "Substantially Prevailing Party," in which case any such Substantially Prevailing Party shall be entitled to recover from any of the breaching parties, in addition to any other damages recoverable against any breaching Party, all of its reasonable Legal Expenses incurred in enforcing its rights under this Agreement, whether or not suit is filed, and in obtaining, enforcing and/or defending any judgment related thereto.

**B.** In the event a dispute arises resulting in the Broker (as used in this paragraph to include any agent, licensee, or employee of Broker) being made a party to any litigation by Buyer or by Seller, the Parties agree that the Party who brought Broker into litigation shall indemnify the Broker for all of its reasonable Legal Expenses incurred, unless the litigation results in a judgment against the Broker.

27. **PERFORMANCE.** Delivery of the required funds and executed documents to the Settlement Agent will constitute sufficient tender of performance. Funds from this transaction at Settlement may be used to pay off any existing liens and encumbrances, including interest, as required by lender(s) or lienholders.

28. **DEFAULT.** If Buyer fails to complete Settlement for any reason other than Default by Seller, Buyer shall be in Default and, at the option of Seller, Deposit may be forfeited to Seller as liquidated damages and not as a penalty. In such event, Buyer shall be relieved from further liability to Seller. If Seller does not elect to accept Deposit as liquidated damages, Deposit may not be the limit of Buyer's liability in the event of a Default. Buyer and Seller knowingly, freely and voluntarily waive any defense as to the validity of liquidated damages under this Contract, including Seller's option to elect liquidated damages or pursue actual damages, or that such liquidated damages are void as penalties or are not reasonably related to actual damages.

If Deposit is forfeited, or if there is an award of damages by a court or a compromise agreement between Seller and Buyer, Broker may accept, and Seller agrees to pay, Broker one-half of Deposit in lieu of Broker's Fee (provided Broker's share of any forfeited Deposit will not exceed the amount due under the listing agreement).

If Seller fails to perform or comply with any of the terms and conditions of this Contract or fails to complete Settlement for any reason other than Default by Buyer, Seller shall be in Default and Buyer will have the right to pursue all legal or equitable remedies, including specific performance and/or damages.

If either Seller or Buyer refuses to execute a release of Deposit ("Release") when requested to do so in writing and a court finds that such party should have executed the Release, the party who so refused to execute the Release will pay the expenses, including, without limitation, reasonable attorney's fees, incurred by the other party in the litigation. Seller and Buyer agree that no Escrow Agent will have any liability to any party on account of disbursement of Deposit or on account of failure to disburse Deposit, except only in the event of Escrow Agent's gross negligence or willful misconduct. The parties further agree that Escrow Agent will not be liable for the failure of any depository in which Deposit is placed and that Seller and Buyer each will indemnify, defend and save harmless Escrow Agent from any loss or expense arising out of the holding, disbursement or failure to disburse Deposit, except in the case of Escrow Agent's gross negligence or willful misconduct.

If either Buyer or Seller is in Default, then in addition to all other damages, the defaulting party will immediately pay the costs incurred for the title examination, Appraisal, survey and the Broker's Fee in full.

29. **OTHER DISCLOSURES. Buyer and Seller should carefully read this Contract to be sure that the terms accurately express their respective understanding as to their intentions and agreements. Broker can counsel on real estate matters, but if legal advice is desired by either party, such party is advised to seek legal counsel. Buyer and Seller are further advised to seek appropriate professional advice concerning the condition of Property or tax and insurance matters.** The following provisions of this Paragraph disclose some matters which the parties may investigate further. These disclosures are not intended to create a contingency. Any contingency must be specified by adding appropriate terms to this Contract. The parties acknowledge the following disclosures:

**A.   Property Condition.** Various inspection services and home warranty insurance programs are available. Broker is not advising the parties as to certain other issues, including without limitation: water quality and quantity (including but not limited to, lead and other contaminants); sewer or septic; soil condition; flood hazard areas; possible restrictions of the use of Property due to restrictive covenants, zoning, subdivision, or environmental laws, easements or other documents; airport or aircraft noise; planned land use, roads or highways; and construction materials and/or hazardous materials, including but without limitation flame retardant treated plywood (FRT), radon, urea formaldehyde foam insulation (UFFI), mold, polybutylene pipes, synthetic stucco (EIFS), underground storage tanks, defective drywall, asbestos and lead-based paint. Information relating to these issues may be available from appropriate government authorities.

**B.   Legal Requirements.** All contracts for the sale of real property must be in writing to be enforceable. Upon ratification and Delivery, this Contract becomes a legally binding agreement. Any changes to this Contract must be made in writing for such changes to be enforceable.

**C.   Financing.** Mortgage rates and associated charges vary with financial institutions and the marketplace. Buyer has the opportunity to select the lender and the right to negotiate terms and conditions of the financing subject to the terms of this Contract. The financing may require substantial lump sum (balloon) payments on the due dates. Buyer has not relied upon any representations regarding the future availability of mortgage money or interest rates for the refinancing of any such lump sum payments.

**D.   Broker.** Buyer and Seller acknowledge that Broker is being retained solely as a real estate agent and not as an attorney, tax advisor, lender, appraiser, surveyor, structural engineer, mold or air quality expert, home inspector, or other professional service provider. Broker may from time to time engage in the general insurance, title insurance, mortgage loan, real estate settlement, home warranty and other real estate-related businesses and services. Therefore, in addition to Broker's Fee specified herein, Broker may receive compensation related to other services provided in the course of this transaction pursuant to the terms of a separate agreement/disclosure.

**E.   Property Taxes.** Your property tax bill could substantially increase following settlement. For more information on property taxes, contact the appropriate taxing authority in the jurisdiction where Property is located.

**F.   Property Insurance.** Obtaining property insurance is typically a requirement of the lender in order to secure financing. Insurance rates and availability are determined in part by the number and nature of claims and inquiries made on a property's policy as well as the number and nature of claims made by a prospective Buyer. Property insurance has become difficult to secure in some cases. Seller should consult an insurance professional regarding maintaining and/or terminating insurance coverage.

**G.   Title Insurance.** Buyer may, at Buyer's expense, purchase owner's title insurance. Depending on the particular circumstances of the transaction, such insurance could include affirmative coverage

DocuSign Envelope ID: 2B6482A5-B5D1-44B5-9476-D02C28625CA9

against possible mechanics' and materialmen's liens for labor and materials performed prior to Settlement and which, though not recorded at the time of recordation of Buyer's deed, could be subsequently recorded and would adversely affect Buyer's title to Property. The coverage afforded by such title insurance would be governed by the terms and conditions thereof, and the premium for obtaining such title insurance coverage will be determined by its coverage.

Buyer may purchase title insurance at either "standard" or "enhanced" coverage rates. For purposes of owner's policy premium rate disclosure by Buyer's lender(s), if any, Buyer and Seller require that enhanced rates be quoted by Buyer's lender(s). Buyer understands that nothing herein obligates Buyer to obtain any owner's title insurance coverage at any time, including at Settlement, and that the availability of enhanced coverage is subject to underwriting criteria of the title insurer.

**30. ASSIGNABILITY.** This Contract may not be assigned without the written consent of Buyer and Seller. If Buyer and Seller agree in writing to an assignment of this Contract, the original parties to this Contract remain obligated hereunder until Settlement.

**31. DEFINITIONS.**
    **A.** "Date of Ratification" means the date of Delivery of the final acceptance in writing by Buyer and Seller of all the terms of this Contract to Buyer and Seller (not the date of the expiration or removal of any contingencies).
    **B.** "Appraisal" means a written appraised valuation of Property.
    **C.** "Day(s)" or "day(s)" means calendar day(s) unless otherwise specified in this Contract.
    **D.** All reference to time of day shall refer to the time of day in the Eastern Time Zone of the United States.
    **E.** For the purpose of computing time periods, the first Day will be the Day following Delivery and the time period will end at 9 p.m. on the Day specified.
    **F.** The masculine includes the feminine and the singular includes the plural.
    **G.** "Legal Expenses" means attorney fees, court costs, and litigation expenses, if any, including, but not limited to, expert witness fees and court reporter fees.
    **H.** "Notices" ("Notice," "notice," or "notify") means a unilateral communication from one party to another. All Notices required under this Contract will be in writing and will be effective as of Delivery. Written acknowledgment of receipt of Notice is a courtesy but is not a requirement.
    **I.** "Buyer" and "Purchaser" may be used interchangeably in this Contract and any accompanying addenda or notices.
    **J.** "Seller Subsidy" is a payment from Seller towards Buyer's charges (including but not limited to loan origination fees, discount points, buy down or subsidy fees, prepaids or other charges) as allowed by lender(s), if any. It is Buyer's responsibility to confirm with any lender(s) that the entire credit provided herein may be utilized. If lender(s) prohibits Seller from the payment of any portion of this credit, then said credit shall be reduced to the amount allowed by lender(s).

**32. MISCELLANEOUS.** This Contract may be signed in one or more counterparts, each of which is deemed to be an original, and all of which together constitute one and the same instrument. Documents obtained via facsimile machines will also be considered as originals. Typewritten or handwritten provisions included in this Contract will control all pre-printed provisions that are in conflict.

**33. VOID CONTRACT.** If this Contract becomes void and of no further force and effect, without Default by either party, both parties will immediately execute a release directing that Deposit be refunded in full to Buyer according to the terms of the DEPOSIT paragraph.

**34**. **HOME WARRANTY.** ☐ Yes **OR** ☒ No
Home Warranty Policy selected by ☐ Buyer or ☐ Seller and paid for and provided at Settlement
by: ☐ Buyer or ☐ Seller. Cost not to exceed $_____. Warranty provider to be _____
_____.

**35**. **TIME IS OF THE ESSENCE.** Time is of the essence means that the dates and time frames agreed
to by the parties must be met. Failure to meet stated dates or time frames will result in waiver of
contractual rights or will be a Default under the terms of the Contract.

If this Contract is contingent on financing, and the contingency has not been removed or satisfied,
any delay of the Settlement Date necessary to comply with Buyer's lender's obligations pursuant
to the RESPA-TILA Integrated Disclosure rule, is not a Default by Buyer; but, Seller may declare
the Contract void in writing. Nothing herein shall prohibit the parties from mutually agreeing in
writing to extend Settlement Date under terms acceptable by both parties.

**36**. **ARBITRATION.** Nothing in this Contract shall preclude arbitration under the Code of Ethics
and Standards of Practice of the National Association of REALTORS®.

**37**. **REAL ESTATE LICENSED PARTIES.** The parties acknowledge that _____ is
an ☐ active **OR** ☐ inactive licensed real estate agent in ☐ Virginia and/or ☐ Other _N/A_____
and is either the ☐ Buyer **OR** ☐ Seller **OR** ☐ is related to one of the parties in this transaction.

**38**. **ENTIRE AGREEMENT.** This Contract will be binding upon the parties and each of their
respective heirs, executors, administrators, successors, and permitted assigns. The provisions not
satisfied at Settlement will survive the delivery of the deed and will not be merged therein. This
Contract, unless amended in writing, contains the final and entire agreement of the parties and
the parties will not be bound by any terms, conditions, oral statements, warranties or
representations not herein contained. The interpretation of this Contract will be governed by the
laws of the Commonwealth of Virginia.

**39**. **ADDITIONS.**  The following forms, if ratified and attached, are made a part of this Contract.
(This list is not all inclusive of addenda that may need to be attached).

| | | | | |
|---|---|---|---|---|
| ☒Yes | ☐No | Home Inspection/Radon Testing Contingency | | |
| ☐Yes | ☒No | Lead-Based Paint Inspection Contingency | | |
| ☒Yes | ☐No | Contingency and Clauses | ☐Yes ☒No | Private Well and/or Septic |
| ☐Yes | ☒No | Pre-Settlement Occupancy | ☐Yes ☒No | Post-Settlement Occupancy |
| ☒Yes | ☐No | Residential Property Disclosure | ☐Yes ☒No | Lead-Based Paint Disclosure |
| ☐Yes | ☒No | FHA Home Inspection Notice | ☐Yes ☒No | VA/FHA/USDA Financing |
| ☒Yes | ☐No | Conventional Financing | ☒Yes ☐No | Other (specify): Bankrupcy Addendum |

**40. DISCLOSURE OF SALES PRICE TO APPRAISER.** Listing Broker and Selling Broker are
hereby authorized to release the Sales Price listed in PRICE AND SPECIFIED FINANCING
Paragraph to any appraiser who contacts them to obtain the information.

**41. OTHER TERMS.** _____
Buyer and Seller authorize the lender, title company, escrow agent and/or their
representatives to disclosure and provide copies of the Closing Disclosures and/or
~~settlement statements to the Agents/Brokers involved in this transaction.~~

> **Date of Ratification (see DEFINITIONS)**
> _____1/31/2020_____

**SELLER:**                                            **BUYER:**

1/30/2020 | 9:25:04 AM PST ⌐DocuSigned by:      1/29/2020 / ⌐DocuSigned by: Autumn Prescott
Date         Signature Paul Houston             Date        Signature Autumn Prescott

1/30/2020 | 9:46:10 PM CST ⌐DocuSigned by:      1/29/2020 / Aaron Prescott
Date         Signature Yaxette Houston          Date        Signature Aaron Prescott

_____ / _____          _____ / _____
Date         Signature                          Date        Signature

_____ / _____          _____ / _____
Date         Signature                          Date        Signature


\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**For information purposes only:**

Listing Brokerage's Name and Address:          Cooperating Brokerage's Name and Address:

Keller Williams Chantilly Ventures LLC         Redfin Corporation
14399 Penrose Pl #300                          3110 Fairview Park Drive, Suite 200⬜ Falls Church, VA 22
Chantilly, VA 20151

Brokerage Phone #: 703-815-5700                Brokerage Phone #: 703-665-6665

Bright MLS Broker Code: KWR4                   Bright MLS Broker Code: REFC1

VA Firm License #: 0226019029                  VA Firm License #: 0226019213

Agent Name: Lorie Nijjar                       Agent Name: Steve Popovitch

Agent Email: vahomeseller@gmail.com            Agent Email: steve.popovitch@redfin.com

Agent Phone #: 571-781-4577                    Agent Phone #: (703) 895-0941

MLS Agent ID # 3216089                         MLS Agent ID # 3078779

VA Agent License #: 0225228847                 VA Agent License #: 0225215308 (VA)

Team Name:                                     Team Name:

Team Business Entity License #:                Team Business Entity License #:

**© 2019 Northern Virginia Association of REALTORS®, Inc.**



This is a suggested form of the Northern Virginia Association of REALTORS®, Inc. ("NVAR"). This form has been exclusively printed for
the use of REALTOR® members of NVAR, who may copy or otherwise reproduce this form in identical form with the addition of their
company logo. Any other use of this form by REALTOR® members of NVAR, or any use of this form whatsoever by non-members of
NVAR is prohibited without the prior written consent of NVAR. Notwithstanding the above, no REALTOR® member of NVAR, or any
other person, may copy or otherwise reproduce this form for purposes of resale.



EQUAL HOUSING
OPPORTUNITY

DocuSign Envelope ID: 2B5482A5-8594-44F5-9476-D02C2325CA9

# REDFIN

## CONVENTIONAL FINANCING AND APPRAISAL CONTINGENCY ADDENDUM

This Addendum is made on <u>1/29/2020</u>, to a sales contract ("Contract") offered on <u>1/29/2020</u>, between <u>Autumn Prescott and Aaron Prescott</u> ("Buyer") and <u>Paul Houston and Yavette Houston</u> ("Seller") for the purchase and sale of Property: <u>12178 Cheshire Ct, Bristow, VA 20136</u>.

**1.  SPECIFIED FINANCING** "Specified Financing" means the terms set forth in Paragraphs 2A and 2B of this Contract and the following loan terms:

    **A. First Trust.** Buyer will ☒ **Obtain OR** ☐ **Assume** a ☒ **Fixed OR** an ☐ **Adjustable** rate First Deed of Trust loan amortized over <u>30</u> years. The interest rate for this loan is at an (initial) interest rate not to exceed <u>market</u>% per year.

    **B. Second Trust.** Buyer will ☐ **Obtain OR** ☐ **Assume** a ☐ **Fixed OR** an ☐ **Adjustable** rate Second Deed of Trust loan amortized over _____ years. The interest rate for this loan is at an (initial) interest rate not to exceed _____% per year.

**2.  ALTERNATIVE FINANCING.** This financing contingency shall not apply to any Alternative Financing. "Alternative Financing" means any change to the financing terms in the Specified Financing, including but not limited to Down Payment amount, the amount financed, loan type (i.e., Conventional, FHA, VA, USDA or Other), term of any loan, interest rate, or loan program (i.e., assumption, fixed or adjustable rate).

Buyer may substitute Alternative Financing for the Specified Financing. However, Buyer shall obtain Seller's written consent and shall execute a new financing addendum (if applicable) if Buyer wishes to retain the protection of a financing contingency. Should Buyer pursue Alternative Financing without Seller's written consent, Buyer shall waive the protection of this financing contingency.

Buyer's substitution of lender(s) to which written application has been made under Paragraph 2D of this Contract shall not: (a) constitute a change in the Specified Financing; or (b) constitute Buyer Default provided there is no additional expense to Seller and Settlement Date is not delayed.

**(Select Paragraph 3 OR 4)**

**3.  FINANCING CONTINGENCY WITH AUTOMATIC EXTENSION.**

    **A.** This Contract is contingent on Buyer Delivering to Seller by 9 p.m. <u>25</u> Days after Date of Ratification ("Financing Deadline") written conditional commitment(s) for Specified Financing.

    **B.** If Buyer has not Delivered the written conditional commitment(s) by Financing Deadline, this contingency will continue up to, and including, Settlement Date. However, upon expiration of Financing Deadline, Seller may at Seller's option Deliver Notice to Buyer that Buyer has three (3) days to void the Contract. If Buyer does not void the Contract within three (3) days following Delivery of Seller's Notice, this financing contingency is removed and the Contract will remain in full force and effect without this financing contingency.

    **C.** Buyer may void this Contract by Delivering to Seller, prior to the satisfaction or removal of this contingency, a written rejection from the lender(s) to whom Buyer has applied for Specified Financing. However, Buyer will be in Default whether or not this financing contingency has been removed if Settlement does not occur on Settlement Date for any reason other than Default by Seller.

   **D.** Nothing herein shall prohibit the parties from mutually agreeing to terms acceptable to both
   parties in writing.

**4.  FINANCING CONTINGENCY WITH AUTOMATIC EXPIRATION.**

   **A.** This Contract is contingent on Buyer Delivering to Seller by 9 p.m. _____Days after Date of
   Ratification ("Financing Deadline") written conditional commitment(s) for Specified Financing.

   **B.** If the Buyer has not Delivered the written conditional commitment(s) by Financing Deadline,
   this financing contingency will expire.

   **C.** Buyer may void this Contract by delivering to Seller, prior to the satisfaction or expiration of this
   contingency, a written rejection from the lender(s) to whom Buyer has applied for Specified
   Financing. However, Buyer will be in Default whether or not this financing contingency has
   been removed if Settlement does not occur on Settlement Date for any reason other than Default
   by Seller.

   **D.** Nothing herein shall prohibit the parties from mutually agreeing to terms acceptable to both
   parties in writing.

**5.  APPRAISAL CONTINGENCY.** This Contract ☒ is contingent **OR** ☐ is not contingent upon an
   Appraisal pursuant to this paragraph. Buyer shall have until 9 p.m. 21 Days (minimum of 21
   days recommended) following the Date of Ratification to obtain an Appraisal ("Appraisal
   Deadline"). In the event that neither box is checked, this Contract is contingent upon an Appraisal
   pursuant to this paragraph and the Appraisal Deadline is the Financing Deadline set forth above.
   Buyer shall provide Notice to Seller by the Appraisal Deadline, as follows:

   **A.** The Appraisal is equal to or greater than the Sales Price. This contingency has been satisfied and
   removed. The parties shall proceed to Settlement; **OR**

   **B.** The Appraisal is equal to or greater than the Sales Price. However, Buyer elects not to proceed
   with consummation of this Contract because Property does not satisfy the lender(s) requirements,
   the Appraisal does not allow for the Specified Financing or Property is inadequate collateral.
   Such Notice must be accompanied by a written denial of the financing showing written evidence
   of the lender(s)'s decision concerning Property. Buyer must provide such written evidence
   concurrently with Buyer's Notice of election not to proceed; **OR**

   **C.** The Appraisal is not equal to or greater than the Sales Price and Buyer elects not to proceed with
   consummation of this Contract unless Seller elects to lower the Sales Price to the appraised
   value. Buyer's Notice shall include a copy of the written statement setting forth the appraised
   value of Property. It will be Seller's option to lower the Sales Price to the appraised value and
   the parties shall proceed to Settlement at the lower Sales Price. If Seller does not make this
   election, the parties may agree to mutually acceptable terms. Each election must be made by
   Notice within 3 Days after Notice from the other party. The parties will immediately sign any
   appropriate amendments. If the parties fail to agree, this Contract will become void; **OR**

   **D.** Buyer elects to proceed with consummation of this Contract without regard to the Appraisal. The
   parties shall proceed to Settlement.

   If Buyer fails to give Seller Notice by the Appraisal Deadline, this contingency will continue, unless
   Seller at Seller's option gives Notice to Buyer that this Contract will become void. If Seller delivers
   such Notice, this Contract will become void at 9 p.m. on the third day following Delivery of Seller's
   Notice, unless prior to such date and time Buyer delivers the required Notice.

**6. LENDER REQUIRED REPAIRS.** If, as a condition of providing financing under this Contract, the lender(s) requires repairs to be made to Property, then Buyer will give Notice to Seller of the lender(s)'s required repairs. Within 5 Days after such Notice, Seller will give Notice to Buyer as to whether Seller will make the repairs. If Seller will not make the repairs, Buyer will give Notice to Seller within 5 Days after Seller's Notice as to whether Buyer will make the repairs. If neither Seller nor Buyer will make the repairs, then this Contract will become void. This clause will not release Seller from any responsibilities set forth in the paragraphs titled UTILITIES WATER, SEWAGE, HEATING AND CENTRAL AIR CONDITIONING; PERSONAL PROPERTY AND FIXTURES; WOOD-DESTROYING INSECT INSPECTION; or in the Private Well and/or Septic System Addendum or any terms specifically set forth in this Contract and any addenda.

**SELLER:**                                    **BUYER:**

1/30/2020 | 9:25:04 AM DST                    1/29/2020

Date        Signature                          Date        Signature
                Paul Houston                                Autumn Prescott

1/30/2020 | 9:46:10 PM                         1/29/2020

Date        Signature                          Date        Signature
                Yavette Houston                            Aaron Prescott

Date        Signature                          Date        Signature

Date        Signature                          Date        Signature

**© 2019 Northern Virginia Association of REALTORS®, Inc.**



This is a suggested form of the Northern Virginia Association of REALTORS®, Inc. ("NVAR"). This form has been exclusively printed for the use of REALTOR® members of NVAR, who may copy or otherwise reproduce this form in identical form with the addition of their company logo. Any other use of this form by REALTOR® members of NVAR, or any use of this form whatsoever by non-members of NVAR is prohibited without the prior written consent of NVAR. Notwithstanding the above, no REALTOR® member of NVAR, or any other person, may copy or otherwise reproduce this form for purposes of resale.



# REDFIN

## HOME INSPECTION AND RADON TESTING CONTINGENCY ADDENDUM

This Addendum is made on <u>1/29/2020</u>, to a sales contract ("Contract") offered on <u>1/29/2020</u> <u> </u>, between <u>Autumn Prescott and Aaron Prescott</u> ("Buyer") and <u>Paul Houston and Yavette Houston</u> ("Seller") for the purchase and sale of Property: <u>12178 Cheshire Ct, Bristow, VA 20136</u>

<u> </u>

(select 1 or 2 below)

**1. HOME INSPECTION WITH OPTION TO NEGOTIATE REPAIRS OR VOID**

**A. Inspection Period** Contract is contingent ("Home Inspection Contingency") until 9 p.m. <u> </u> days after Date of Ratification ("Home Inspection Deadline") upon inspection(s) of Property by licensed (if applicable), professional, insured inspector(s) ("Inspection") at Buyer's discretion and expense. Pursuant to the terms of this Contract, Seller will have all utilities in service. If, for any reason, the utilities are not in service, Home Inspection Deadline will be extended until 9 p.m. <u> </u> days after Buyer receives Notice from Seller that all utilities are in service.

If the results of such Inspection(s) are unsatisfactory to Buyer, in Buyer's sole discretion, Buyer shall Deliver to Seller, prior to Home Inspection Deadline:

1) An entire copy of the report(s) and a written addendum listing the specific existing deficiencies of Property that Buyer would like Seller to remedy together with Buyer's proposed remedies ("Inspection Addendum") **OR**

2) An entire copy of the report(s) and Notice voiding Contract.

If Buyer fails to obtain an Inspection, fails to Deliver a copy of the report(s) to Seller, or fails to Deliver Inspection Addendum or Notice voiding this Contract prior to Home Inspection Deadline, this Contingency will expire and this Contract will remain in full force and effect with no Home Inspection Contingency.

**B. Negotiation Period** In the event of A.1) above, the parties shall have until 9 p.m. <u> </u> days after Buyer's Delivery of Inspection Addendum ("Negotiation Period") to negotiate a mutually acceptable written addendum addressing the deficiencies.

At any time during Negotiation Period, Buyer or Seller may make, modify, rescind, or alter as many offers and counter-offers as desired to reach mutually acceptable terms. Buyer and Seller may agree on terms by signing a written addendum describing agreed upon deficiencies and remedies within Negotiation Period. Otherwise, all offers and/or counteroffers terminate.

**C. Buyer's Election Period** If, at the end of Negotiation Period, the parties are unable to reach an agreement, Buyer shall have the option to void this Contract by Delivering Notice to Seller by 9 p.m. <u> </u> days following the end of Negotiation Period, otherwise Home Inspection Contingency shall be removed and this Contract will remain in full force and effect.

**2. HOME INSPECTION WITH OPTION TO VOID ONLY**

**A. Inspection Period** Contract is contingent ("Home Inspection Contingency") until 9 p.m. <u>10</u> days after Date of Ratification ("Home Inspection Deadline") upon

 

inspection(s) of Property by licensed (if applicable), professional, insured inspector(s) ("Inspection") at Buyer's discretion and expense. Pursuant to the terms of this Contract, Seller will have all utilities in service. If, for any reason, the utilities are not in service, Home Inspection Deadline will be extended until 9 p.m. __5_____ days after Buyer receives Notice from Seller that all utilities are in service.

If the results of such Inspection(s) are unsatisfactory to Buyer, in Buyer's sole discretion, Buyer shall Deliver to Seller, prior to Home Inspection Deadline an entire copy of the report(s) and Notice voiding Contract.

If Buyer fails to obtain an Inspection, fails to Deliver a copy of the report(s) to Seller, or fails to Deliver Notice voiding this Contract prior to Home Inspection Deadline, this Contingency will expire and this Contract will remain in full force and effect with no Home Inspection Contingency.

**3. RADON TESTING**

**A. Radon Inspection Period** This Contract is contingent ("Radon Inspection Contingency") until 9 p.m. __10_____ days after the Date of Ratification ("Radon Testing Deadline") upon Buyer, at Buyer's discretion and expense, having the Property inspected for the presence of radon and receiving a report ("Radon Report") from the test, by a radon professional certified by the National Radon Safety Board ("NRSB"), or the National Radon Proficiency Program ("NRPP") ("Radon Professional") using U.S. Environmental Protection Agency ("EPA") approved testing methods. Testing device(s) to be placed and retrieved by Radon Professional. Pursuant to the terms of this Contract, Seller will have all utilities in service. If, for any reason, the utilities are not in service, Radon Testing Deadline will be extended until 9 p.m. __5_____ days after Buyer receives Notice from Seller that all utilities are in service.

**B. Testing Guidelines** Seller agrees to follow EPA guidelines and testing recommendations in order to produce accurate results. These guidelines include the following requirements to be in place **12 hours prior to the scheduled test period** and throughout the duration of the test:

a. ALL windows must remain shut;
b. Exterior doors should be used only for normal ingress/egress and must not be left open; and
c. Whole house exhaust fans or smaller fans near the testing device(s) must not be used.

Should Radon Professional indicate in writing that these requirements have not been met, Seller shall pay for a new test under Buyer's direction and Radon Inspection Contingency shall automatically be extended until 9 p.m. __5_____ days after Seller notifies Buyer that these requirements are in place.

If Radon Report confirms the presence of radon that equals or exceeds the action level established by the EPA, Buyer, at Buyer's sole discretion, shall Deliver to Seller, prior to Radon Testing Deadline:

1) An entire copy of Radon Report and a written addendum requiring Seller, at Seller's expense prior to Settlement: (i) to mitigate the radon condition by contracting with an

 

NRSB or NRPP listed remediation firm to reduce the presence of radon below the action level established by the EPA; and (ii) to Deliver to Buyer a written re-test result performed by a Buyer-selected Radon Professional and following the required Testing Guidelines ("Radon Inspection Addendum") **OR**

2) An entire copy of Radon Report and Notice voiding this Contract.

If Buyer fails to obtain an inspection, fails to Deliver a copy of Radon Report to Seller, or fails to Deliver Radon Inspection Addendum or Notice voiding this Contract prior to Radon Testing Deadline, this Contingency will expire and this Contract will remain in full force and effect with no Radon Inspection Contingency.

**C. Radon Negotiation Period** In the event of B.1) above, the parties shall have until 9 p.m. __5__ days after Buyer's Delivery of Radon Inspection Addendum ("Radon Negotiation Period") to negotiate a mutually acceptable written addendum.

At any time during the Radon Negotiation Period, Buyer or Seller may make, modify, rescind, or alter as many offers and counter-offers as desired to reach mutually acceptable terms. Buyer and Seller may agree on terms by signing a written addendum describing agreed upon terms within Radon Negotiation Period. Otherwise, all offers and/or counteroffers terminate.

**D. Buyer's Election Period** If, at the end of Radon Negotiation Period, the parties are unable to reach an agreement, Buyer shall have the option to void Contract by Delivering Notice to Seller by 9 p.m. __2__ days following the end of Radon Negotiation Period, otherwise Radon Inspection Contingency shall be removed and Contract will remain in full force and effect.

**SELLER:**                                    **BUYER:**

1/30/2020 | 9:25:04 AM PST / _____    1/29/2020 / _____
Date       Signature    Paul Houston         Date       Signature    Autumn Prescott

1/30/2020 | 9:46:10 PM CST / _____    1/29/2020 / _____
Date       Signature    Yavette Houston      Date       Signature    Aaron Prescott

_____ / _____                    _____ / _____
Date       Signature                          Date       Signature

_____ / _____                    _____ / _____
Date       Signature                          Date       Signature

### © 2019 Northern Virginia Association of REALTORS®, Inc.



This is a suggested form of the Northern Virginia Association of REALTORS®, Inc. ("NVAR"). This form has been exclusively printed for the use of REALTOR® members of NVAR, who may copy or otherwise reproduce this form in identical form with the addition of their company logo. Any other use of this form by REALTOR® members of NVAR, or any use of this form whatsoever by non-members of NVAR is prohibited without the prior written consent of NVAR. Notwithstanding the above, no REALTOR® member of NVAR, or any other person, may copy or otherwise reproduce this form for purposes of resale.



# CAUTION



U.S. Department of Housing
and Urban Development
Federal Housing Administration (FHA)

OMB Approval No: 2502-0538
(exp. 05/31/2014)

# For Your Protection:
# Get a Home Inspection

## Why a Buyer Needs a Home Inspection

A home inspection gives the buyer more detailed information about the overall condition of the home prior to purchase. In a home inspection, a qualified inspector takes an in-depth, unbiased look at your potential new home to:

✓ Evaluate the physical condition: structure, construction, and mechanical systems;
✓ Identify items that need to be repaired or replaced; and
✓ Estimate the remaining useful life of the major systems, equipment, structure, and finishes.

## Appraisals are Different from Home Inspections

An appraisal is different from a home inspection. Appraisals are for lenders; home inspections are for buyers. An appraisal is required to:

✓ Estimate the market value of a house;
✓ Make sure that the house meets FHA minimum property standards/requirements; and
✓ Make sure that the property is marketable.

## FHA Does Not Guarantee the Value or Condition of your Potential New Home

If you find problems with your new home after closing, FHA can not give or lend you money for repairs, and FHA can not buy the home back from you. That is why it is so important for you, the buyer, to get an independent home inspection. Ask a qualified home inspector to inspect your potential new home and give you the information you need to make a wise decision.

## Radon Gas Testing

The United States Environmental Protection Agency and the Surgeon General of the United States have recommended that all houses should be tested for radon. For more information on radon testing, call the toll-free National Radon Information Line at 1-800-SOS-Radon or 1-800-767-7236. As with a home inspection, if you decide to test for radon, you may do so before signing your contract, or you may do so after signing the contract as long as your contract states the sale of the home depends on your satisfaction with the results of the radon test.

## Be an Informed Buyer

It is your responsibility to be an informed buyer. Be sure that what you buy is satisfactory in every respect. You have the right to carefully examine your potential new home with a qualified home inspector. You may arrange to do so before signing your contract, or may do so after signing the contract as long as your contract states that the sale of the home depends on the inspection.



**HUD-92564-CN** (6/06)



# CAUTION





Autumn Prescott    1/29/2020

Aaron Prescott    1/29/2020

DocuSign Envelope ID: 2B6482A5-3FD4-44E5-9470-D02C23825CA9

# REDFIN

## CONTINGENCIES/CLAUSES ADDENDUM

This Addendum is made on 1/29/2020 , to a sales contract ("Contract") offered on 1/29/2020 ,

between  Autumn Prescott and Aaron Prescott                                             ("Buyer") and

Paul Houston and Yavette Houston                                             ("Seller") for

the purchase and sale of Property: 12178 Cheshire Ct, Bristow, VA 20136                              .

The following provisions if initialed by the parties are incorporated into and made a part of this
Contract:

1. **CONTINGENCIES**

   A. **SALE OF BUYER'S PROPERTY AND KICK-OUT** This Contract is contingent until
   9 p.m. 30             days after Date of Ratification ("Deadline") upon the sale of
   Buyer's property located at 9615 Bonair Dr.
   Manassas, VA 20109  ("Buyer's Property"). If Buyer does not satisfy, amend or remove
   this contingency by the Deadline pursuant to sub-paragraph 3 below, this Contract will
   become void.

   1) Seller may continue to offer Property for sale and accept bona fide back-up offers to
   this Contract until this contingency is satisfied or removed. If a back-up offer is
   accepted, Seller will Deliver Notice to Buyer requiring that this contingency be
   removed or satisfied pursuant to sub-paragraph 3 below not later than 9 p.m. 3
   days after Delivery of Notice or this Contract will become void. If Buyer fails to
   satisfy or remove the contingency by Deadline, this Contract will become void.

   2) Buyer's Property will be listed exclusively and actively marketed by a licensed real
   estate broker and entered into a multiple listing service within 10      days after the
   Date of Ratification at a price not to exceed $ 350,000.00             .

   3) Buyer may:

      a. Satisfy this contingency by Delivering to Seller a copy of the ratified contract for
      the sale of Buyer's Property with evidence that all contingencies, other than
      financing and appraisal, have been removed or waived by Deadline **OR**

      b. Remove this contingency by Delivering to Seller (1) a letter from the lender
      stating that the financing is not contingent in any manner upon the sale and
      settlement of any real estate or obtaining a lease of any real estate and that Buyer
      has sufficient funds available for the down payment and closing costs necessary to
      complete Settlement; **OR** (2) evidence of sufficient funds available to complete
      Settlement without obtaining financing.

NVAR – K1344 – rev. 07/17        Page 1 of 4        Seller: _____ -Buyer: _____



4) If Buyer satisfies the requirements of sub-paragraph 3.a. above, this Contract will remain contingent upon the settlement of the sale of Buyer's Property. This paragraph will survive the satisfaction of the contingency for the sale of Buyer's Property. Settlement (under this Contract) may not be delayed more than _7_____ Days after the Settlement Date (specified in this Contract) without the parties' written consent. Seller ☒ will **OR** ☐ will not accept an assignment of funds. If a further delay is required to obtain coinciding settlements, Buyer may at Buyer's option declare the Contract void in writing. Nothing herein shall prohibit the parties from mutually agreeing to extend Settlement Date under terms acceptable by both parties. If at any time after Date of Ratification the contract for the sale of Buyer's Property becomes void, Buyer will immediately Deliver Notice to Seller together with evidence of such voiding, at which time either Seller or Buyer may declare this Contract void by Delivering Notice to the other party.

**B. SETTLEMENT OF BUYER'S PROPERTY** Settlement of this Contract is contingent upon the settlement of the contract for the sale of Buyer's property located at _____ _____ _____ ("Buyer's Property"). Settlement (under this Contract) may not be delayed more than _____ days after Settlement Date (specified in this Contract) without the parties' written consent. Seller ☐ will **OR** ☐ will not accept an assignment of funds. If a further delay is required to obtain coinciding settlements Buyer may at Buyer's option declare the Contract void in writing. Nothing herein shall prohibit the parties from mutually agreeing to extend Settlement Date under terms acceptable by both parties. . If at any time after the Date of Ratification the contract for the sale of Buyer's Property becomes void, Buyer will immediately Deliver Notice to Seller together with evidence of such voiding, at which time either Seller or Buyer may declare this Contract void by Delivering Notice to the other party.

**C. CONTINGENT ON THE SELLER PURCHASING ANOTHER HOME** This Contract is contingent until 9 p.m. _____ days after Date of Ratification ("Deadline") to allow Seller to ratify a contract for purchase of another home and conduct whatever due diligence Seller deems necessary under the terms of Seller's contract to purchase another home.  This contingency will terminate at Deadline and this Contract will remain in full force and effect unless Seller delivers Notice to Buyer, prior to Deadline, that this Contract is void.

**D. GENERAL** This Contract is contingent until 9 p.m. _____ days after Date of Ratification ("Deadline") upon: _____ _____ _____ _____ _____

## 2. CLAUSES

**A. BACK-UP CONTRACT** This Contract is first back-up to another contract dated _____
between Seller and _____
_____ as Buyer.

This Contract becomes the primary contract immediately upon Notice from Seller that the
other contract is void. All deadlines contained in this Contract shall be measured from ☐
Date of Ratification **OR** ☐ date this Contract becomes primary.  Additionally,
Settlement Date will be _____ days after the date this Contract becomes primary.
Buyer may void this back-up Contract at any time by Delivering Notice to Seller prior to
Delivery of Notice from Seller that this Contract has become the primary contract. If the
other contract settles, this Contract will become void. The rights and obligations of the
parties under the primary contract are superior to the rights and obligations of the parties
to this back-up Contract.

**B. "AS IS" PROPERTY CONDITION**  The following terms in this Contract are hereby
amended (check all that apply):
- ☒ All clauses pertaining to delivery of Property free and clear of trash and debris and
broom clean are deleted
- ☒ Buyer assumes responsibility for compliance with all laws and regulations regarding
smoke detectors
- ☒ All clauses pertaining to termites and wood-destroying insects are deleted
- ☒ All clauses pertaining to Seller's compliance with all orders or notices of violation of
any county or local authority are deleted
- ☒ All requirements for Seller to comply with Property Owners' or Condominium
Owners' Associations notices of violations related to the physical condition of
Property are deleted

**C. UNREPRESENTED SELLER OR BUILDER AND BUYER'S BROKER** Upon
Seller's irrevocable instruction, it is understood and agreed by all parties that _____
_____ (Cooperating Broker's name) of
_____ (Cooperating Broker's firm)
is acting as an agent solely representing Buyer in this transaction ("Buyer's Broker").
Seller agrees to pay Buyer's Broker a payment of $_____ ☐ in cash **OR**
☐_____ % of the total sales price. Settlement Agent is hereby irrevocably
directed to deduct Buyer's Broker fee from Seller's proceeds of the sale at Settlement.
The parties acknowledge that Buyer's Broker relationship was disclosed to Seller and/or
Seller's agent prior to showing Property to Buyer.

**D. 1031 EXCHANGE (BUYER)** Property is being acquired to complete an IRC Section
1031 tax-deferred exchange pursuant to an exchange agreement. This Settlement will be



coordinated with _____

_____,
("Intermediary"), who shall instruct Seller as to the manner Property shall be conveyed to
Buyer. There shall be no additional expense to Seller as a result of the exchange and
Seller shall cooperate with Buyer and Intermediary in the completion of the exchange.

E. **1031 EXCHANGE (SELLER)** Seller and Buyer agree to transfer Property by utilizing
an IRC Section 1031 tax-deferred exchange. Buyer agrees to cooperate with Seller, at no
expense or liability to Buyer, in the completion of the exchange, including execution of
all necessary documents, the intention of the parties being that Seller utilizes Section
1031 to defer taxes by acquiring like-kind real estate through an exchange agreement
established at Settlement.  The parties will execute all necessary documents as
determined by Intermediary at Settlement, which documents are prepared at Seller's
expense.

F. **REAL ESTATE COOPERATIVE** (Virginia Real Estate Cooperative Act § 55-483 et
seq.) Seller ☐ has delivered **OR** ☐ will deliver to the Buyer the required public offering
statement.  If the statement was delivered prior to the Date of Ratification then Buyer has
10 days from the Date of Ratification to void this Contract by Delivering a Notice to
Seller.  If the statement was delivered after the Date of Ratification, then Buyer will have
five days from receipt of the statement or Date of Settlement, whichever occurs first, to
void the contract by Delivering a Notice to Seller.

**Except as modified by this Addendum, all of the terms and provisions of this Contract
are hereby expressly ratified and confirmed and will remain in full force and effect.**

| **SELLER:** | | **BUYER:** | |
|---|---|---|---|
| 1/30/2020 \| 9:25:04 AM PST | DocuSigned by: _Paul Houston_ | 1/29/2020 | DocuSigned by: _Autumn Prescott_ |
| Date | Signature | Date | Signature |
| | Paul Houston | | Autumn Prescott |
| 1/30/2020 \| 9:46:10 AM CST | DocuSigned by: _Yavette Houston_ | 1/29/2020 | DocuSigned by: _Aaron Prescott_ |
| Date | Signature | Date | Signature |
| | Yavette Houston | | Aaron Prescott |
| _____/_____ | _____ | _____/_____ | _____ |
| Date | Signature | Date | Signature |
| _____/_____ | _____ | _____/_____ | _____ |
| Date | Signature | Date | Signature |

**© 2017 Northern Virginia Association of REALTORS®, Inc.**



# REDFIN

## ADDENDUM - SALE

This Addendum is made on 1/29/2020 _____, to a sales contract ("Contract") offered on 1/29/2020 _____,
between Autumn Prescott and Aaron Prescott _____ ("Buyer") and
Paul Houston and Yavette Houston _____ ("Seller") for the
purchase and sale of Property: 12178 Cheshire Ct, Bristow, VA 20136
_____.

The parties agree that this Contract is modified as follows:

This contract is contingent for a period of 30 days from date of ratification for
the Seller to obtain any and all necessary approvals from the bankruptcy court to
allow this sale to go to settlement. All timelines in the contract shall begin
upon the date Seller gives Notice to Purchaser of written documentation of the
court's approval of the sale. With the exception of the Home Sale Contingency, which will commence at ratification.



Should the court make no final ruling by the end of the contingency period, either
party may void the contract without penalty or the parties may mutually agree to
extend this contingency for an amount of time to obtain court approval of the
sale.

Should the court rule against the sale during this contingency period, Seller will
immediately notify Purchaser. Either party may then give Notice to the other
party to void this contract with no penalty to or further obligation by either
party, and the earnest money deposit shall be returned to Purchaser in full; or
the parties may mutually agree to modify the sales contract so as to obtain court
approval in a re-submission of the contract to the court.

This Addendum shall not alter, modify, or change in any other respect this Contract, and except as
modified herein, all of the terms and provisions of this Contract are expressly ratified and confirmed
and shall remain in full force and effect.

| **SELLER:** | | **BUYER:** | |
|---|---|---|---|
| 1/30/2020 \| 9:25:04 AM PST | _DocuSigned by:_ | 1/29/2020 | _DocuSigned by:_ Autumn Prescott |
| Date | Signature Paul Houston | Date | Signature Autumn Prescott |
| 1/30/2020 \| 9:46:10 PM CST | _DocuSigned by:_ Yavette Houston | 1/29/2020 | _DocuSigned by:_ Aaron Prescott |
| Date | Signature Yavette Houston | Date | Signature Aaron Prescott |
| Date | Signature | Date | Signature |
| Date | Signature | Date | Signature |

© 2019 Northern Virginia Association of REALTORS®, Inc.



EQUAL HOUSING
OPPORTUNITY

REALTOR®

dotloon signature verification: dtlp.us/VtwD-fvUb-INC9
DocuSign Envelope ID: 2B5482A5-859A-44D5-9470-D02C2935CA9
Case 18-12876-BFK    Doc 46-2    Filed 02/04/20    Entered 02/04/20 13:13:27    Desc
ratified contract    Page 30 of 34



Virginia Real Estate Board
http://www.dpor.virginia.gov/Consumers/Disclosure_Forms/

# RESIDENTIAL PROPERTY DISCLOSURE STATEMENT

## ACKNOWLEDGEMENT BY SELLER AND PURCHASER

The Virginia Residential Property Disclosure Act (§ 55-517 et seq. of the *Code of Virginia*) requires the owner of certain residential real property—whenever the property is to be sold or leased with an option to buy—to provide notification to the purchaser of any disclosures required by the Act and to refer the purchaser to the Real Estate Board website referenced below for additional information.

Certain transfers of residential property are excluded from this requirement (see § 55-518).

**PROPERTY ADDRESS/** 12178 Cheshire Court, Bristow, VA 20136
**LEGAL DESCRIPTION:**

The purchaser is advised to consult the RESIDENTIAL PROPERTY DISCLOSURE STATEMENT webpage (http://www.dpor.virginia.gov/Consumers/Residential_Property_Disclosures) for important information about disclosures required by law that may affect the buyer's decision to purchase the real property described above.

**The owner(s) hereby provides notification** as required under the Virginia Residential Property Disclosure Act (§ 55-517 et seq. of the *Code of Virginia*) and, if represented by a real estate licensee as provided in § 55-523, further acknowledges having been informed of the rights and obligations under the Act.

| *Paul Houston* | dotloop verified 10/29/19 9:12 PM EDT F5GY-XV5V-MVTG-KVDP | *Yavette Houston* | dotloop verified 10/29/19 8:59 PM EDT FXJA-CXHZ-KMCE-NOK7 |

Owner                                   Owner

10/29/2019                             10/29/2019
Date                                    Date

**The purchaser(s) hereby acknowledges receipt of notification** of disclosures as required under the Virginia Residential Property Disclosure Act (§ 55-517 et seq. of the *Code of Virginia*). In addition, if the purchaser is (i) represented by a real estate licensee or (ii) not represented by a real estate licensee but the owner is so represented as provided in § 55-523, the purchaser further acknowledges having been informed of the rights and obligations under the Act.

| DocuSigned by: *Autumn Prescott* | DocuSigned by: *Aaron Prescott* |

Purchaser                              Purchaser

1/29/2020                              1/29/2020
Date                                    Date

DocuSign Envelope ID: 2B6482A5-85D4-44E5-9470-D02C2325CA9

# REDFIN

## UNDERSTANDING YOUR RIGHTS AND RESPONSIBILITIES UNDER THE VIRIGNIA RESIDENTIAL PROPERTY DISCLOSURE ACT

The Virginia Residential Disclosure Act (the "Act") (Code of Virginia Sections 55-517 et seq.*) requires real estate licensees to inform their clients about the responsibilities of owners/sellers and buyers under the Act. Your agent has given you this form to help you understand those rights and responsibilities. Your agent can answer any questions you may still have after you read this form and can provide you with a copy of the Act, if you request it.

The Act applies to the sale, exchange, installment sale, or lease with option to purchase of residential real property improved with one to four dwelling units. The Act does not apply to all transactions, however you can read the complete list of exemptions in Section 55-518 of the Act. Some of the exemptions include transfers pursuant to certain court orders; transfers by foreclosure or in bankruptcy; transfers between co-owners or spouses; transfers between parents and grandparents and their children or grandchildren; tax sales; and transfers by governmental or housing authorities. Sales of new homes are exempt, with some exceptions as described below.

The Act requires the owner to give the buyer a form developed by the Virginia Real Estate Board, called the "Residential Property Disclosure Statement" (the "Statement"). The Statement has contains a link which will give you information that can help the buyer make a more knowledgeable decision about purchasing a property, and contains both disclaimers and disclosures by the owner. The Statement will direct buyers to the RESIDENTIAL PROPERTY DISCLOSURES web page (http://www.dpor.virginia.gov/Consumers/Residential_Property_Disclosures/) for important information about the real property.  Buyers are advised to consult the webpage.

1. **CONDITION:** First, the owner states that the property and all improvements are being sold "as is", thus disclaiming any warranties or representations as to the condition of the property or its improvements. This includes the existence of any covenants and restrictions which could affect the property or improvements. The Statement advises the buyer to use whatever due diligence the buyer thinks necessary, including home and other inspections or examinations as specified in the purchase contract, to determine the condition of the property. The buyer must complete all such inspections prior to settlement.

2. **ADJACENT PARCELS:** Second, the owner makes no representations about any property that may be adjacent to the owner's property including zoning classification or permitted uses of adjacent parcels. The buyer has the responsibility to inquire about the status of any adjacent parcels, using whatever due diligence the buyer deems necessary to satisfy any questions about such adjacent land. The buyer must also conclude all those types of inquiries prior to settlement.

These two initial 'disclaimers' are then followed by a series of declarations about other factors that may affect the property.  In each of those declarations, the seller informs the buyer that the owner either makes no representations as to the individual matters asserted:

DocuSign Envelope ID: 2B6462A5-8504-44E5-947C-D02C2825CA9

- Existence of any historic district ordinances affecting the property;
- Existence of any resource protection areas on the property that might have been created by an ordinance implementing the Chesapeake Bay Preservation Act (§ 62.1-44.15:67 et seq.) adopted by the locality where the property is located, pursuant to § 62.1-44.15:74;
- Information on any sexual offenders registered under Chapter 23 (§ 19.2-387 et seq.) of Title 19.2;
- Whether the property is within a dam break inundation zone;
- Presence of any stormwater detention facilities located on the property;
- Presence of any wastewater system, including the type or size, or associated maintenance responsibilities, including costs, located on the property;
- The right to install or use solar energy collection devices on the property;
- Whether the property is located in one or more special flood hazard areas;
- Whether the property is subject to one or more conservation or other easements;
- Whether the property is subject to a community development authority approved by a local governing body pursuant to Article 6 (§ 15.2-5152 et seq.) of Chapter 51 of Title 15.2.

In each case, the buyer should exercise whatever due diligence the buyer deems necessary, including reviews of local maps, zoning ordinances, flood certifications, the Virginia sex offender registry (contact the local police department, or visit www.vsp.state.va.us), inspection reports or other sources of information, all in accordance with the contract's terms and conditions.

There are some "Additional Written Disclosure Requirements" which may apply to the sale and purchase of a property, depending on certain factors unique to that property.  If applicable to the transaction, the owner has the obligation to inform the buyer that:

- Section 55-518.B contains disclosures concerning the first sale of a residential property; the builder of the new property has the duty to provide the buyer with the disclosures required under that section if the property is a new home;
- If the property is located wholly or partially in Planning District 15, the builder or owner of the property must inform the buyer in writing whether the builder or owner has any knowledge of any mining activities that may have taken place on the property in the past, and the presence of any abandoned mines, shafts or pits. (This provision applies only to properties located in Planning District 15. Properties located in the geographic area served by NVAR are not located in Planning District 15.)
- Section 55-519.1 contains disclosures required when the property is located in any area where there is a military air installation. (This provision applies to certain localities in the Hampton Roads region; it does not include properties located in the geographic area served by NVAR.)
- Section 55-519.2 contains a disclosure requirement for properties with defective drywall.
- Section 55-519.2:1 contains a disclosure requirement for properties with pending building code or zoning ordinance violations.

- Section 55-519.4 contains a disclosure requirement for properties previously used to manufacture methamphetamine.
- Section 32.1-164.1:1 contains a disclosure requirement regarding the validity of septic system operating permits.

The owner must provide the buyer with the completed, signed Statement prior to contract acceptance (ratification). The Statement may be included in the contract, in an addendum or in a separate document. If the owner fails to deliver the Statement prior to ratification, the buyer has the right to terminate the contract at or prior to the earliest of the following:

- 3 days after delivery if the Statement is delivered in person;
- 5 days after the date of the postmark if the Statement was sent by U.S. mail, postage prepaid and properly addressed to the buyer;
- at settlement;
- upon occupancy;
- on the buyer's written application to a lender for a mortgage loan if the application contains a disclosure that the right to terminate the contract ends upon loan application;
- Buyer signs a written waiver of the right to terminate under this Act, when the waiver is not part of the purchase contract, after the buyer has received a signed copy of the Statement.

Should the buyer choose to terminate the contract under this Act, the buyer must give the owner written notice under the same time periods as above. The buyer can deliver the written termination notice by hand or by U.S. mail, postage prepaid or electronically with a receipt and properly addressed to owner. A buyer who terminates the contract in compliance with the Act cannot be penalized and the buyer's deposit must be returned promptly.

Unless the owner is grossly negligent, or willfully or negligently misrepresents information in the Statement, he or she is not responsible for any error, inaccuracy or omission in the Statement. The owner can reasonably rely on information from public agencies, from public officials or employees, and from informational reports prepared by licensed engineers, land surveyors, geologists, wood-destroying insect experts, contractors or home inspection experts. Also, if the buyer, in the course of performing his or her due diligence, receives information directly from a public agency, governmental official or employee, or from the types of experts listed above, and the buyer informs the person or agency that the buyer intends to rely on that information pursuant to this Act, then the owner is relieved of any further responsibility related to the information given to the buyer or for such information found in the Statement.

Finally, if the owner learns of any material changes related to the information provided in the Statement, or if any of the information becomes inaccurate due to something that happens after the Statement is delivered to the buyer, the owner must give the buyer the updated information at or prior to settlement. The owner has not violated the Act if such a change occurs. If there are no such changes, at settlement the owner must certify to the buyer that the Statement remains accurate, and that the property condition remains substantially the same as at the time the owner completed the Statement.

Autumn Prescott                    1/29/2020          Aaron Prescott                    1/29/2020

# REDFIN

## ADDENDUM - SALE

This Addendum is made on ___1/30/2020___, to a sales contract ("Contract") offered on ___1/30/2020___,
between __Autumn Prescott and Aaron Prescott__ ("Buyer") and
__Paul Houston and Yavette Houston__ ("Seller") for the
purchase and sale of Property: __12178 Cheshire Ct, Bristow, VA 20136__

The parties agree that this Contract is modified as follows:
```
The home to sell contingency period will commence at contract ratification.  Home
Inspection, Radon, Financing and Appraisal Contingencies will commence at the time of
Bankruptcy Court approval.
```

This Addendum shall not alter, modify, or change in any other respect this Contract, and except as
modified herein, all of the terms and provisions of this Contract are expressly ratified and confirmed
and shall remain in full force and effect.

**SELLER:**                                          **BUYER:**

1/30/2020 | 9:25:04 AM PST                           1/30/2020

_____/_____               _____/_____
Date        Signature Paul Houston                   Date        Signature Autumn Prescott

1/30/2020 | 9:46:10 PM CST                           1/30/2020

_____/_____               _____/_____
Date        Signature Yavette Houston                Date        Signature Aaron Prescott

_____/_____               _____/_____
Date        Signature                                Date        Signature

_____/_____               _____/_____
Date        Signature                                Date        Signature

**© 2019 Northern Virginia Association of REALTORS®, Inc.**

NVAR – K1117 – rev. 01/19